Alright, our second case for this morning is Webster v. CDI Indiana. When you are ready, Mr. Peters, we will hear from you. May it please the Court, I'm Stephen Peters here on behalf of Appellant CDI Indiana, LLC, which appeals a $15 million judgment on jury verdict from the Southern District of Indiana, imposing vicarious liability for the medical malpractice of radiologist Dr. Michael Walker for failure to diagnose recurrent rectal cancer based upon his readings and interpretations of Mrs. Webster's CT scan. There are a number of issues that have been raised in the appeal, but I will address three in my attempt to extend SOARD section 429 vicarious liability to CDI Indiana. Second, if vicarious liability is extended, then as a matter of law and public policy, CDI Indiana, as a principle, should not be required to pay greater damages than its negligent agent, Dr. Walker, whose liability is capped at $1.25 million under the Indiana Medical Malpractice Act. Third, CDI Indiana's motion to be granted, given the important issues of Indiana law and public policy. So can I ask you to start with, and this will relate to your first two points at least, whether your current position is that CDI is a medical provider within the scope of the Indiana Medical Malpractice Act or whether it is not? Your Honor, we do not believe that CDI Indiana is a qualified health care provider because... Do the damage caps in the statute have anything to do with CDI Indiana? I mean, it would be like saying Home Depot isn't a provider either. Because it's part and parcel of the principles of vicarious liability. Vicarious liability is a public policy-based... I know what vicarious liability is, but the Indiana statute is a trade-off, right? You're a certified medical provider. You pay into the patient compensation fund. The damage caps apply. The state of Indiana has struck a balance that makes sense to it. But if you're not a certified, if you have tort law, I don't see where you get to free ride on the patient contributions of the certified people. It's not a free ride, Your Honor, because it's part and parcel of vicarious liability. It shifts to the principle. The principle then gets implied indemnification back over against the negligent patient. But there are principles that say that the principle does not... See, you're actually presenting to us a lawsuit that's not before us. So there's a certain amount of damages that the jury determined were for indemnification that the doctor might be able to say, I'm only responsible for perhaps $250,000 of it or perhaps $1.25 million of it, although I don't know where the doctor reaches into the fund. But be that as it may, we don't know if the doctor is going to have to pay more or whether the indemnity will be there. There's like a whole lawsuit out there that somebody else will need to resolve. Well, Your Honor, another aspect of vicarious liability is the principle's liability is wholly derived from the agent. So any substantive defense that is available to the agent is also available to the principle. But that's not a substantive defense. Indiana has chosen... Juries can find whatever they want to in terms of amounts of damages. They do it in Title VII cases, too, where there are caps on damages. There are all sorts of areas where there are caps on damages. And it doesn't take away the jury's assessment of the damage. It talks about what's collectible. But, Your Honor, the Medical Malpractice Act is a matter of public policy. But why do you, a non-provider, get to, through the back door, use those damages limits? Because... The S.W.O.R.D. case essentially says these internal contracting relationships... Maybe you have an outside contractor run the emergency room. Maybe you have an outside contractor run your urgent care clinic at a different location. Maybe you have an outside contractor hire another outside contractor who hires doctors. But the S.W.O.R.D. case says, what's important is, what have you held yourself out to be? Does the patient walk in and think they're getting their care from CDI Indiana, or do you have a sign on the wall that says, we're not responsible for any of these doctors here, and we don't supervise them, and don't come crying to us if something goes wrong? Your Honor, briefly, we don't think S.W.O.R.D. applies because in S.W.O.R.D. the parties stipulated that the hospital had an independent contractor relationship with the physician. Why is that relevant to the holding of S.W.O.R.D. and the way S.W.O.R.D. has been construed by subsequent Indiana Court of Appeals decisions? Because, Honor, if you go back to the text of the Restatement of Tort 429, it's quoted on page 25 and 26 of our brief. It starts off with imposing liability on one who employs an independent contractor to perform services. So you're saying we should privilege the language of the American Law Institute's Restatement of Torts over what the Indiana Supreme Court chose to adopt? No, Your Honor. What I'm saying is, the analysis, there's a different facts scenario here than in S.W.O.R.D. I don't disagree with you. In S.W.O.R.D. it was a hospital. This is an imaging facility. But the question is always whether that difference is a material difference or whether the principles of vicarious liability that the Indiana Supreme Court adopted apply regardless of that particular difference. I think it is material. I think the error that the district court... Why is it material? She just took the judge-made rulings from that. But that's what's... Look, the ALI is a great organization. Many of us are members of it. But the fact is, its restatements mean nothing up till the point when a state supreme court or other authorized body chooses to adopt some of it. But then I would point to the language of S.W.O.R.D. where it talks about the fact that this is a legal fiction. And the reason why you impose this indirect legal responsibility is not because the principal did anything wrong, but because of the party's relationship with the negligent agent. I don't understand why that matters. We deal with a lot of... Well, we actually deal with real legal fictions. And we also deal with areas in the law where party A is going to share in the responsibility for what party B does in the principal-agent area in particular. And this all derives from apparent agency. But there's also a restatement provision in the restatement of agency, 217B, which I think comes into play here and underscores how this all interrelates with one another. And the reason why this is important is because, again, the defense that's available to the agent is available to the principal. And 217B says if you wind up with judgments in varying amounts, it's erroneous. And so that's how you balance this. And we've cited the LaCroix opinion from the California Court of Appeals, which undertook an analysis in a very similar, almost identical situation. Your opponents, however, distinguish the structure of the California law, which does not use the kind of patient compensation fund that Indiana has chosen. But this goes to the heart of the matter. We have the right to assert the damage of capital bonds to Dr. Walker. Why do you? I mean, I know you keep saying that. You've said that on almost every page of your brief. But you're not a medical provider. It's a defense for medical providers. I'm taking you at your word. You're not a medical provider. All this other stuff was a mistake. But we're being held vicariously liable, even though we're not negligent. And so what? Well, at the end of the day, that's just the way things work. Take a perfectly normal Section 1983 case in which all public employees may be entitled to the defense of qualified immunity, but the employer is not. Right? You're pointing at a situation in which the agent, or at least the apparent agent, may have a defense, but the employer doesn't have a defense. Is there someplace else in the law where a personal defense for an agent would be applied to an employer? I think this is the context. No. I asked you someplace else in the law. Give me an example about where in the law a defense that is personal to an agent is applied to an employer. I'm not aware of one, Your Honor. So your whole position depends on our adopting some approach that does not seem to have any support in Indiana law. And here we are just playing ventriloquist dummies for the Indiana courts. You need to find support in Indiana law for this position. Your Honor, it's in the Indiana Medical Malpractice Act. But you're assuming the answer to the question if you say that. Because the Indiana Medical Malpractice Act is premised on somebody being a qualified medical provider. And my feeling is if you are a qualified medical provider, that would take us down one road. But you insist very firmly that you're not. You're just a landlord. You buy equipment. You do other things. And taking you at your word, I don't see where you are any more than the person who sells office stationery to the clinic is a qualified medical provider. I think you have to do this in order to protect Dr. Walker. No. That's the lawsuit that's not here yet. The doctor may or may not. I have no idea. But I really don't want to go too far down the road in hypotheticals. Maybe if there is some later common law indemnity action against the doctor, Indiana courts would recognize that the doctor's protection under the malpractice law still is there. Maybe they won't. And Indiana will have to figure out how it wants to balance those two policies. I frankly don't know. But it strikes me that's not the lawsuit that's here. What's CDI's relationship with Dr. Walker? There is none. Because there are a lot of references in the briefs to the and in the underlying papers in the district court to CDI's website. And I couldn't find a hyperlink, so I went on CDI's website. I don't know if CDI's website today is what it was back then. But if you click on CDI's website, it says Our Radiologists. And you click on there, and there's Dr. Walker represented as one of your radiologists. And it says Meet Our Specialists. And Dr. Walker is listed on CDI's website as one of your specialists. So part of that goes to the reasonable belief of the patient here. But you're saying, oh, you could sue Dr. Walker for indemnity, but I don't know how realistic that is if he's one of your specialists. But he's not CDI Indiana's specialist. He's a medical consulting specialist. I see him into my rebuttal time, so I would like to save him. You are welcome to save some time. Thank you. Yes, I'm not sure if I'm going to pronounce your name correctly. Are you Mr. Garrow or? Garrow. Garrow, okay. My name is Jerry Garrow, together with Kathleen Delaney. I represent Courtney and Brian Webster. Your Honors, the district court correctly applies the Indiana Supreme Court's holding in Sword versus NKC Hospitals to the facts of this case. Sword focuses on the reasonableness of a patient's belief that the facility where she is receiving her care is actually providing that care. Now, how many facilities would really want to post the notice that the Indiana Supreme Court seems to think would be the get-out-of-jail-free card? I mean, I'm envisioning the emergency room at Northwestern Hospital in Chicago, and I'm imagining a sign in the wall saying, we staff this with contract physicians. Come in here at your own risk, more or less. I don't think that health care facilities really want to do that. But they could. I mean, if they don't want to be liable, then they can disclaim the apparent agency. But I just wonder how realistic it is. Well, and Your Honor, I think that goes to the focus of the Sword opinion. The Sword opinion is concerned about the rights of the patient. The patient has a right to know who is, or more importantly, who is not providing her care. When a patient walks into a health care facility, be it a hospital, be it a surgery center, be it a pain management clinic. That does seem a little hypothetical. Do you think the Supreme Court of Indiana requires CDI to post notice of all the things that might conceivably matter to them? No, Your Honor, it does not. Well, then, you know, Indiana law is what it is. It's not something we can change. But your proposition that the patient has a right to know everything that might affect them, you have just immediately taken back. Because the things that most affect them, things like what would the liability of CDI be if something goes wrong, they are never going to be told in advance. Never. Your Honor, I don't believe that I said that a patient has the right to know everything that's going to affect them. I've said what Sword requires. So didn't Sword just have a rule out provision? I mean, Sword said, as I remember, that as long as there's a posting that says, I'm paraphrasing, whoever it is, it isn't us. You know, we aren't the ones who are supervising and otherwise arranging for the specialist, that the Indiana Supreme Court thought that was enough. That would trigger an inquiry, perhaps, in the part of the patient. But the hospital or care facility has done enough as long as it says it's not us. Your Honor, what Sword requires is, and it doesn't have to be a sign. Typically, how this is done is in the consent form that's given to the patient. When the patient has consented. Which they will not read. Therefore, won't get any notice. And that may be, Your Honor, but this is what Sword requires. And what it requires is a disclosure that the physicians who are providing your care are independent contractors who are not subject to the supervision and control of the facility. Are you by any chance familiar with Omri Ben-Shahar's book with the title More Than You Needed to Know? He calculated that if you read all the consent forms that you agree to in the course of a year, that would take approximately five times as many hours as exist in a year. I am not familiar with the work, Your Honor, but I probably don't doubt the calculation. Yeah, because you don't read them either. I click agree when I get it on the website, Your Honor, absolutely. Exactly. As do we all. Although I did try once at a hospital to wade down through one of those forms as the person at the other side of the desk tapped her foot in impatience. But, Your Honor, I think these points go more to the rationale underlying Sword and maybe should have been applied by the litigants in Sword. But the bottom line is the rule that Sword has come up with here is that a facility is required to give that notice. And this facility did not. It is not required to give the notice. Exactly. Just that there are legal consequences for not giving it. And, Your Honor, Mr. Manette, who was the counsel for CDI at trial. By the way, is there anything in Indiana law that would prevent CDI and Dr. Walker or the equivalent from agreeing by contract that Dr. Walker would either indemnify or insure CDI against its potential liability? There is nothing that would prevent them from doing that contractually, Your Honor. But I gather that wasn't done either. It was. It's certainly not in the record, Your Honor. Is there anything in the record about the relationship between Dr. Walker and CDI? Your Honor, the relationship between Dr. Walker and CDI, as disclosed by the record, was that Dr. Walker was an employee at the time of the malpractice of a company known as Imaging Consultants of Indiana. And Imaging Consultants of Indiana was contracted by Medical Scanning Consultants to provide some radiology services at CDI's CARMA facility. And was there any relationship between Medical Scanning Consultants or Imaging Consultants of Indiana with CDI? Well, Your Honor, they were separate corporations. Medical Scanning Consultants and CDI and CDI's sole limited partner, Center for Diagnostic Imaging Inc., all share the same address outside of Minneapolis. The addendum to the reply brief indicates that one of the declarant in the affidavits that's included in the addendum to the reply brief, he is both an officer of MSC and of CDI. I think the testimony at trial was that there was, well, the district court noted the complex interrelated nature. Doesn't seem completely arm's length. It does not at all, Your Honor. And I think Mr. Manette, the counsel's testimony was it's a Byzantine arrangement where you have multiple, multiple branches of Center for Diagnostic Imaging handling multiple, multiple things. But what we do know is that CDI Indiana was responsible for pretty much everything at the imaging facility. Everything except the reading of the images themselves. Yes, Your Honor, that's where they lateral. The nurses were putting the IVs in or what have you. From the moment Mrs. Webster hit the door of CDI Indiana's facility, she walked into premises leased by CDI Indiana. She was greeted by employees hired and employed by CDI Indiana. Her scan was performed on scanners. So the med techs were CDI? The radiology techs were CDI Indiana people. The testimony at trial is that CDI Indiana was responsible for every single thing that happened to Mrs. Webster that day except for the review of the scan. Except the one thing that counted. Under S.W.O.R.D., again, we're looking at the reasonable belief of the patient. When a patient comes into a facility like that, and everyone that she encounters and everything that happens to her that day is done by CDI Indiana, under S.W.O.R.D. and under the apparent agency doctrine embraced by S.W.O.R.D., she has a right to assume that the care, all of the care that she's receiving there is being provided by that facility unless the facility tells her. Can I just remind me, the bills say CDI Indiana? The bills, my recall is the bills say CDI. But they don't say Dr. Walker or imaging consultants or medical scanning? They do not, Your Honor, and also the proceeds from the imagings that are done at CDI Indiana's facility are split between CDI Indiana and MSC. And did CDI bill the insurance company as well? That information is not in the record, Your Honor, as to who actually billed the insurance company. So that's not record evidence, Your Honor. The district court here found that in the post-trial rulings that CDI was a health care provider. Was that something that the jury had to find? No, Your Honor, I don't think so. The reason the district court went to that finding was because of the arguments raised by CDI in its post-trial motions. And there is a difference between a health care provider and a qualified health care provider under the act, as Your Honor has noted in questioning CDI's attorney. CDI was clearly a health care provider, as Your Honor noted. They were the ones putting the IVs in. They positioned the patients. They take the images. They do everything up to the time that it's time to have that image interpreted. But they chose, and this was a choice they made, not to become a qualified health care provider and not to enjoy the protections under the Indiana Medical Malpractice Act that come with being a qualified health care provider. So in the quid pro quo, is that there's some annual or monthly or some amount that you pay into this fund? What is required, Your Honor, is to provide proof of financial responsibility, which is typically proof of insurance, and to pay an annual surcharge. How the Indiana Act works is that a qualified provider's liability at the time of the malpractice at issue in this case, qualified health care provider's liability is limited to $250,000. For damages over that and up to an additional $1 million, those damages are paid by the Indiana Patients' Compensation Fund. The Indiana Patients' Compensation Fund is funded by surcharges paid by qualified health care providers. So the fund depends upon qualified health care providers paying those surcharges to pay those excess damages beyond the $250,000 cap for the provider. And if you're a health care provider, if you just pay that fee in, does that make you a qualified health care provider, or do you have to jump through additional hoops? That's it, Your Honor. Other than the insurance. Yeah, the proof of financial responsibility and pay the surcharge, boom. You're a qualified health care provider. You've got access to all the protections of the Act. But the Act is explicit in saying that if you are not a qualified health care provider, you don't get those protections. 3418.3.1 of the Indiana Code expressly says that a health care provider who is not qualified under the Act doesn't get the protections of the Act, and a claimant's remedy against that qualified health care provider is unaffected by the terms of the Act. I mean, it must be common that there are some. Actually, I don't know who wouldn't want to be a qualified health care provider, but let's suppose. But there would often be some people who are qualified health care providers and others who are not. I mean, suppose CDI was literally just leasing the premises, and other than that they turned it over to a medical practice, all of whom were qualified health care providers. So CDI in that situation would be working with qualified health care providers but would not itself be one. That would be true, Your Honor. And if CDI were, as it argued here, truly a landlord, this argument might be a little different. But for CDI to portray itself as merely a landlord here is directly in opposition to the evidence most favorable to the verdict that's in the record. The evidence most favorable to the verdict is they did everything up to the interpretation of the images. Would SORD still apply if they weren't a health care provider? Not a qualified, but a health care provider? I think our argument would be more difficult if they were truly a landlord. If that's all they were, it might be a little more difficult. But I would certainly make the argument that, yes, they would, because, again, the focus of SORD is the patient's reasonable belief. The patient, when she walks into a facility like CDI's imaging facility in Carmel, doesn't know anything except, I'm walking into this facility. That my insurance company told me to go to. That's what the evidence in this record indicates, Your Honor. Yes, that Mrs. Webster went there because her insurance company told her that it would be cheaper to go there. One thing that we have not touched upon, Your Honor, is whether any of these arguments are even before this court properly. The district court, in ruling on CDI's Rule 50B motion, specifically found that CDI had waived its argument that extending SORD to this case is against the public policy underlying the Medical Malpractice Act. The court found that CDI had waived its argument that SORD is inapplicable because it would create a potential indemnity claim against Dr. Webster that would exceed his limits under the Medical Malpractice Act. And that CDI had waived its argument that SORD would not be extended here because the Websters retained a viable claim against Dr. Walker under the Medical Malpractice Act. You read CDI's appellate brief and you would never know that the findings of waiver had been issued. They were never once mentioned. Instead, CDI simply repeated the same arguments that the district court had found to have been waived. That is a waiver of any argument against the waiver, Your Honor. You can't just pretend that those findings of the district court of waiver didn't happen and then repeat all the arguments that the court found. Well, you can pretend that. You just have to have legal conspiracy. Again, Your Honor, it is like the decision not to provide notice. It has legal consequences. And those legal consequences, as the court well knows, are wake. Thank you, Your Honor. All right. Thank you, Mr. Garrow. Anything further, Mr. Peters? Mr. Peters, earlier when Judge Wood asked you if CDI was a health care provider, you responded that CDI is not a qualified health care provider. Do you dispute that CDI is a health care provider in the first instance? CDI Indiana does not believe that it's a health care provider in any way, and that's because of the way the relationships are set up. There's a service agreement between CDI Indiana and medical scanning consultants, which is the medical practice. It's a professional association of radiologists. You don't think the administration of IV solutions is a medical service? I think what has to be actionable here is what, in fact, caused the injury, which is the reading and interpretation. No, that's not true. Is it legal in Indiana to provide IV solutions without some medical training? Actually, what happens in this, there is conflicting evidence at trial, but these technicians are supervised by the radiologists, these minors. That's not the answer to Judge Easterbrook's question. It's not responsive. These are, I take it, employees of CDI. That's the representation. I think the testimony at trial was conflicting, that CDI Indiana does not have employees. But I'll say there was a conflict in the evidence. CDI Indiana has no employees at all? That was the testimony of Mr. Minow. But there was other testimony that was contrary to that, and the district judge made a factual finding in her rulings. If I might turn, I would like to address the waiver arguments, and we've addressed these first. There are public policy arguments. Tell me why the waiver argument, why your objection to the waiver argument has not been forfeited by its omission from your opening brief. You lost this point on three grounds in the district court, one of which was waiver. You briefed two of the three grounds, and you ignore the third ground on which you lost. Why isn't that a forfeiture of any objection to the waiver holding? I think there's two reasons. One is we've raised de novo review, and we also cited the waiver cases in our opening brief. Waiver exists in all sorts of contexts where our review is de novo. We have an adversary system. But it has to be argued. Oh, yeah, I just mean de novo review doesn't erase waiver from the scene. We raised a number of arguments. Why the most, I think, powerful one is the fact that Indiana public policy and the public policy issues that are raised here. That might be an argument you could make, but I can't find any argument about waiver in your brief. In fact, I just searched. One of the nice things about electronic filing of briefs is I brought your brief up and searched for the word waiver. It's not in your brief. The word isn't there. Needless to say, there's no argument there. Well, Your Honor, again, we've raised numerous grounds against the waiver, and we think the public policy one under Indiana law is fundamental error. All right. Well, thank you very much, Mr. Peters. Thank you, Mr. Garrow. We will take the case under advisement.